Lindon Andre Voglezon II
@gmail.com

Simi Valley, California,

-9040

Plaintiff in Pro Per



# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION – SANTA ANA

| | |
|---|---|
| Lindon Andre Voglezon II, | Case No.: 8:25-cv-02407-FWS-ADS |
| Plaintiff, | Hon. Fred W. Slaughter |
| vs. | United States District Court Judge |
| | Courtroom: 10D |
| CIG Financial, LLC, dba AUTONATION FINANCE | **PLAINTIFF'S OPPOSITION TO DEFENDANTS' RULE 12(b)(6) MOTION** |
| VALENCIA B IMPORTS, INC., dba VALENCIA BMW, also known as "AUTONATION BMW VALENCIA" | *[Filed concurrently with Objections to Extrinsic Evidence at Rule 12(b)(6), Declaration Of Lindon Andre Voglezon II Pursuant To Fed. R. Civ. P. 56(d), and Plaintiff's [PROPOSED] ORDER — Deny 12(b)(6); or Convert Under 12(d) and Grant Rule 56(d)]* |
| Defendants. | |
| | Complaint Filed: October 24th, 2025 |
| | Hearing Date: January 29th, 2026 |
| | Time: 1:30 PM |
| | Courtroom: 10D |

1

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

This FCRA complaint plausibly alleges Defendants obtained Plaintiff's consumer report without a permissible purpose after he declined dealer financing and appeared with an NFCU pre-approval; hard inquiries then posted on July 15–17, 2025 **(Exhs. A–E)**. On Rule 12(b)(6), those facts are accepted as true. Defendants' "authorization" theory relies on a disputed RouteOne document attached to counsel's declaration. Under Ninth Circuit law, the Court should not consider that exhibit at 12(b)(6); if it does, Rule 12(d) requires conversion and targeted discovery under Rule 56(d) (e-signature metadata, RouteOne/Dealertrack logs, DMS audit trail, NFCU call records).

# TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................. 3

TABLE OF AUTHORITIES ............................................................................ 4

MEMORANDUM OF POINTS AND AUTHORITIES .................................. 5

I. INTRODUCTION .................................................................................. 5

II. LEGAL STANDARD ............................................................................ 6

III. PLAINTIFF STATES A PLAUSIBLE § 1681b CLAIM
(NO PERMISSIBLE PURPOSE) ......................................................... 7
   A. The defense "credit application" cannot be considered at
      Rule 12(b)(6) ................................................................................... 7
   B. Plaintiff's allegations negate any permissible purpose under
      § 1681b(a)(3)(A) or (F) ................................................................. 9
   C. Post-pull conduct supports willfulness and damages ......................... 11

IV. PLAINTIFF'S REMAINING FCRA CLAIMS ARE PLAUSIBLE
OR, AT MINIMUM, WARRANT LEAVE TO AMEND ..................... 12

V. EVIDENTIARY OBJECTIONS TO EXTRINSIC MATERIALS ......... 12

VI. CONCLUSION .................................................................................... 13

# TABLE OF AUTHORITIES

**Federal Cases**

Ashcroft v. Iqbal, 556 U.S. 662 (2009) .................................................................. 4, 6

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) ................................................. 4, 6

Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988 (9th Cir. 2018) ........ 4, 6, 8

Nayab v. Capital One Bank (USA), N.A., 942 F.3d 480 (9th Cir. 2019) .... 4, 6, 7

**Federal Statutes**

Fair Credit Reporting Act, 15 U.S.C. § 1681b .......................................... 4, 6–8, 12

15 U.S.C. § 1681n ...................................................................................................... 12

15 U.S.C. § 1681o ...................................................................................................... 12

15 U.S.C. § 1681q ...................................................................................................... 12

**Rules**

Fed. R. Civ. P. 12(b)(6) ................................................................. 2, 4-6, 8, 10, 13

Fed. R. Civ. P. 12(d) ........................................................................... 2, 4, 6, 8, 13

Fed. R. Civ. P. 56(d) ..................................................................................... 2, 4, 13

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendants ask the Court to dismiss a straightforward FCRA case at the pleading stage based on **(i)** their own view of disputed facts and **(ii)** a credit application attached to counsel's declaration. But on a Rule 12(b)(6) motion, the Court must take Plaintiff's factual allegations as true and draw reasonable inferences in his favor. Plaintiff alleges that:

- He arrived at Valencia BMW with a pre-approved Navy Federal Credit Union ("NFCU") auto loan and expressly declined dealership financing;
- An NFCU representative later told Valencia BMW's sales manager, on a recorded call, that no additional dealer credit pull should be necessary because NFCU was financing the vehicle;
- A salesman named Trevor nevertheless told Plaintiff the dealership "had to" run his credit "for identity verification," and Defendants caused tri-bureau hard inquiries to be made;
- After those inquiries posted, the sales manager repeatedly tried to pressure Plaintiff to abandon the NFCU loan and switch to dealership-controlled financing at a "better interest rate," which Plaintiff refused; and
- When the credit bureaus later advised Plaintiff to request a deletion letter from Valencia BMW's finance management so the inquiries could be removed, management refused and insisted the pulls were "authorized," leaving the hard inquiry to continue harming Plaintiff's credit.

Taken as true, these facts plausibly allege that Defendants obtained and used Plaintiff's consumer report without a permissible purpose and under misleading pretenses, and then refused to remediate the harm. That is enough under Ninth

Circuit law. See Nayab v. Capital One Bank (USA), N.A., 942 F.3d 480, 490–94 (9th Cir. 2019).

Defendants' motion does not attack the plausibility of these allegations so much as ask the Court to credit a competing narrative based on an extrinsic RouteOne credit application attached to the Chapman Declaration. That is improper on Rule 12(b)(6). See Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 998–1003 (9th Cir. 2018). The Chapman exhibit is disputed as to authenticity and scope (including who executed it, when, how, and for what purpose) and is offered to prove the merits of Defendants' "authorization" defense. The Court should decline to consider it at this stage.

If, however, the Court is inclined to consider the credit application or other materials outside the pleadings, Rule 12(d) requires conversion to summary judgment and an opportunity for targeted discovery. Plaintiff has submitted a Rule 56(d) declaration identifying the specific e-signature metadata, RouteOne/Dealertrack logs, DMS audit trails, dealership policies, and NFCU call evidence that are essential to oppose Defendants' "permissible purpose" theory.

Either way, dismissal is not appropriate. At most, if the Court identifies any technical pleading issue, Plaintiff respectfully requests leave to amend.

## II. LEGAL STANDARD

On a Rule 12(b)(6) motion, the Court accepts all well-pleaded facts as true and draws reasonable inferences in the plaintiff's favor. A complaint survives if it contains enough factual matter to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009). Legal conclusions and unwarranted factual inferences may be disregarded, but plausible factual allegations must be credited.

Where an FCRA plaintiff alleges that a consumer report was obtained without a permissible purpose, that is sufficient at the pleading stage. The burden

to prove a permissible purpose lies with the defendant and is typically addressed on summary judgment, not a motion to dismiss. Nayab, 942 F.3d at 490–94.

### III. PLAINTIFF STATES A PLAUSIBLE § 1681b CLAIM (NO PERMISSIBLE PURPOSE)

Plaintiff alleges that he initiated and completed his credit transaction with NFCU, not Defendants, and that he expressly declined dealership financing. (Compl. ¶¶ 10, 12–13, 35.) He further alleges that, despite an NFCU representative telling Valencia BMW's sales manager that the dealership did not need to run Plaintiff's credit because NFCU was providing the loan, Defendants caused hard inquiries to be made on Experian, Equifax, and TransUnion on July 15–17, 2025. (Compl. ¶¶ 14, 17; **Exhs. A–E.**) Defendants then used those inquiries to attempt to steer Plaintiff into dealership financing at a "better interest rate" he did not want, and later refused to provide a deletion letter when the bureaus advised that as the appropriate remedy. (Compl. pp. 3–4, 7; **Exhs. D, G, X-1, Y.**)

Those facts, taken together, more than plausibly allege that Defendants lacked a permissible purpose under 15 U.S.C. § 1681b and misused Plaintiff's report for their own sales purposes rather than for any legitimate "identity verification" or consumer-initiated credit transaction.

### III-A. The defense "credit application" cannot be considered at Rule 12(b)(6).

Defendants' core argument is that Plaintiff "pleads himself out of court" by acknowledging that he signed a credit application, which they attach as Exhibit 1 to the Chapman Declaration. They ask the Court to treat that exhibit as dispositive written authorization under § 1681b(a)(2).

This is improper at the pleading stage. The Chapman exhibit is not part of the Complaint; it is attached to defense counsel's declaration and offered to contradict Plaintiff's factual allegations and prove the merits of Defendants' "authorization" defense. Plaintiff disputes the authenticity, scope, and effect of the document, including:

- Who executed it and by what device/IP,
- Whether any e-signature process complied with applicable standards,
- Whether any consent extended to multi-bureau hard pulls for dealer financing after Plaintiff declined dealer financing and after NFCU advised no dealer pull was needed, and
- Whether any "identity verification" language was explained or used as a pretext.

Under Ninth Circuit law, the "incorporation by reference" doctrine is to be applied sparingly, and courts must not allow defendants to "use the doctrine to insert their own version of events into the complaint to defeat otherwise cognizable claims." Khoja, 899 F.3d at 1002–03. A document is not properly incorporated when its authenticity or relevance is reasonably disputed, or when it is offered for the truth of disputed facts. Id.

Here, Defendants are not merely asking the Court to notice the existence of a credit application; they are asking the Court to accept their characterization of what it means—i.e., that it conclusively establishes a broad, unbounded authorization and defeats all FCRA liability. That is exactly the type of factual dispute that cannot be resolved on Rule 12(b)(6).

The Chapman exhibit is offered for the truth of a hotly disputed merits defense (broad written authorization). **It is not properly incorporated by reference; <u>at minimum</u>,** the vehicle model discrepancy (ES **350** vs. ES **300h**) and unresolved execution details (who/when/how/what scope) confirm the factual dispute—precluding dismissal on the pleadings.

The Court should therefore decline to consider the Chapman exhibit at this stage and evaluate the motion based solely on the Complaint and its attachments. In the alternative, if the Court is inclined to consider Exhibit 1, Rule 12(d) requires conversion to summary judgment and an opportunity for Plaintiff to take targeted

discovery on e-signature metadata, RouteOne/Dealertrack logs, DMS audit trails, policies, and NFCU call evidence, as outlined in Plaintiff's Rule 56(d) declaration.

Even if the Court were to consider Exhibit 1 and conclude that some portion of it constitutes written instructions under § 1681b(a)(2), that does not end the analysis at the pleading stage. Authorization under the FCRA is not boundless: any consent is limited by its stated purpose and by the requirement that the user of the report actually obtained and used the report for a permissible purpose. Plaintiff alleges that any signature was procured only after he had declined dealer financing and after NFCU told the dealership no additional dealer pull was needed, and that Defendants then used the reports primarily to pitch their own financing rather than to complete the NFCU-funded transaction. Those allegations are sufficient to plead that Defendants exceeded the scope of any purported consent, which is a fact issue not appropriate for resolution on a Rule 12(b)(6) motion.

### III-B. Plaintiff's allegations negate any permissible purpose under § 1681b(a)(3)(A) or (F).

Defendants invoke § 1681b(a)(3)(A) (credit transaction initiated by the consumer) and § 1681b(a)(3)(F) (legitimate business need). Their own cases largely arise at summary judgment, and none involve a consumer who (1) came to the dealership with a pre-approved loan from a third-party lender, (2) explicitly refused dealer financing, (3) had his lender tell the dealer it did not need to run his credit, and (4) was then subjected to hard pulls used to pressure him into dealer financing anyway.

Plaintiff alleges that he initiated his credit transaction with NFCU, not Defendants, and that he repeatedly told Defendants he would be using NFCU financing only. (Compl. ¶¶ 10, 12–13.) The NFCU representative then told the Valencia BMW sales manager, on a recorded call, that no additional dealer credit check should be required because NFCU was financing the vehicle. (Compl. p. 7; **Exhs. D, X-1, Y.**) Despite that, Defendants:

- Told Plaintiff they "had to" run his credit "for identity verification,"
- Caused tri-bureau hard auto-loan inquiries to be made, and
- Used those inquiries to pitch a different, dealership-controlled loan at a "better interest rate" Plaintiff did not want.

Defendants also contend that Plaintiff has "pleaded himself out of court" by acknowledging that his NFCU loan was not "consummated" until July 30, 2025. But the Complaint does not admit that Valencia BMW had a legitimate business need to pull tri-bureau auto-loan inquiries in the interim; it alleges the opposite—that Plaintiff refused dealer financing, the financing was through NFCU only, and an NFCU representative told the dealer that no credit pull by the dealership was necessary. To the extent any individual sentence in the Complaint could be read as ambiguous on this point, that ambiguity cannot be resolved against Plaintiff on a Rule 12(b)(6) motion, and in all events would warrant leave to amend rather than dismissal with prejudice.

Those allegations plausibly negate any argument that the inquiries were "in connection with" a consumer-initiated credit transaction with Defendants under § 1681b(a)(3)(A), or that they were limited to any genuine "identity verification" function. Instead, they plausibly allege that Defendants manufactured a pretextual need to access Plaintiff's reports in order to sell their own financing products.

"Legitimate business need" is not a blank check to run tri-bureau auto-loan inquiries after a consumer refuses dealership financing and the funding lender (NFCU) tells the dealer a pull is not needed. Whether any genuine need existed is a fact question—not resolvable on 12(b)(6)—particularly given Defendants' post-pull attempts to switch Plaintiff into dealer financing and their refusal to provide a deletion letter. Similarly, Defendants' reliance on § 1681b(a)(3)(F)'s "legitimate business need" prong does not warrant dismissal. Whether Defendants had such a need, in light of:

- The NFCU pre-approval,

- The NFCU call stating no dealer pull was needed,
- Plaintiff's refusal of dealer financing, and
- The post-pull efforts to switch Plaintiff into dealer financing and refusal to provide a deletion letter,

is a quintessential merits question that cannot be resolved against Plaintiff on the pleadings. Plaintiff specifically alleges that the dealership transaction was financed by NFCU, that Defendants' own financing was never used, and that the inquiries were not necessary to complete the NFCU-funded transaction. (Compl. ¶¶ 17, 35; pp. 3–4, 7.)

Under Nayab, once Plaintiff plausibly alleges that his consumer report was obtained without a permissible purpose, Defendants bear the burden to prove one. Plaintiff has done so here, and Defendants' factual disagreement must wait for discovery.

### III-C. Post-pull conduct supports willfulness and damages.

Plaintiff further alleges that:

- After the inquiries posted, Valencia BMW's sales manager repeatedly tried to persuade Plaintiff to abandon NFCU and accept a dealership loan at a "better" rate; and
- After Plaintiff obtained his NFCU promissory note and contacted the credit bureaus, at least one bureau told him to request a deletion letter from Valencia BMW so the inquiry could be removed, yet Valencia BMW refused to provide such a letter and insisted the pull was authorized. (Compl. pp. 3–4; **Exhs. D, G, X-1, Y.**)

These facts support a reasonable inference that Defendants (1) used the consumer report primarily to market dealer financing, not to verify identity or complete a consumer-initiated transaction, and (2) willfully refused to remediate the harm when given a simple way to do so. That is sufficient to plead willful or negligent noncompliance and actual damages.

At a minimum, such allegations defeat Defendants' request for dismissal with prejudice.

## IV. PLAINTIFF'S REMAINING FCRA CLAIMS ARE PLAUSIBLE OR WARRANT LEAVE TO AMEND

Plaintiff's second and third claims are not "free-standing" causes of action divorced from any substantive violation. They simply track the statutory framework: § 1681b supplies the substantive duty (no report without a permissible purpose), and §§ 1681n and 1681o provide remedies for willful and negligent noncompliance with that duty. To the extent the Court views Counts II and III as inartfully labeled, any issue is purely technical and can be cured by amendment.

Similarly, Plaintiff's references to § 1681q are not an attempt to create a stand-alone criminal claim; they are pled as an alternative theory that Defendants obtained the report under false pretenses by invoking "identity verification" while intending to use the report to push dealership financing. Courts are divided on whether § 1681q, read together with § 1681n, can support civil liability. At a minimum, Plaintiff should be allowed to realign those allegations as part of his willfulness theory under §§ 1681b and 1681n if the Court deems any restructuring necessary.

Accordingly, the Court should not dismiss Counts II and III with prejudice. If the Court finds any deficiency, Plaintiff requests leave under Rule 15 to re-plead his claims to: (1) clarify that §§ 1681n/o operate as remedial provisions for the § 1681b violation, and (2) incorporate additional, already-existing facts regarding the NFCU call, Trevor's "identity verification" statements, the "better interest rate" pressure, and the deletion-letter refusal.

## V. EVIDENTIARY OBJECTIONS TO EXTRINSIC MATERIALS

As explained above and in Plaintiff's separate Objections to Extrinsic Evidence, the Court should not consider the Chapman Declaration and Exhibit 1 at this stage. They are outside the pleadings, disputed as to authenticity and scope,

and offered to prove Defendants' contested "authorization" defense, not for any limited notice purpose. If the Court is inclined to consider them, Rule 12(d) requires conversion to summary judgment and an opportunity for the targeted discovery set forth in Plaintiff's Rule 56(d) declaration before any merits ruling.

**Relief Requested.** Sustain these objections and exclude the Chapman Declaration and Exhibit 1 at Rule 12(b)(6); or, if considered, convert under Rule 12(d) and grant Plaintiff's Rule 56(d) request for targeted discovery before any merits ruling.

## VI. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court:

1. Deny Defendants' Rule 12(b)(6) Motion in its entirety;
2. Sustain Plaintiff's evidentiary objections and decline to consider the Chapman Declaration and Exhibit 1 at the pleading stage; or, in the alternative,
3. If the Court considers extrinsic materials, convert the motion under Rule 12(d), grant Plaintiff's Rule 56(d) request for targeted discovery, and allow supplemental briefing; and
4. In any event, grant Plaintiff leave to amend within 21 days should the Court identify any curable pleading deficiency.

Dated: December 22nd, 2025

x _[signature]_

Respectfully submitted,
/s/ Lindon Andre Voglezon II
Plaintiff, Pro Se